Leon RIDENOUR and Phoebe Ridenour,
Appellants (Plaintiffs Below),

v.

Rex FRANCE and Alene France,
Appellees (Defendants Below).

No. 3-881A200.

Court of Appeals of Indiana,
Third District.

Nov. 30, 1982.

Rehearing Denied Feb. 18, 1983.

Larry C. Thrush, Wabash, for appellants.

Mark S. Pantello, Sowers & Benson, Fort Wayne, for appellees.

STATON, Judge.

After a bench trial, the trial court entered a negative judgment on the Ridenours' claim against the Frances for specific performance of a land sales contract. On appeal, the Ridenours raise the following issues:

I.  Did the Frances, as buyers, assume the risk of property loss pending the closing of the sale?

II. Did the trial court err in denying the Ridenours' claim for specific performance and in granting the Frances the return of the $1,000.00 downpayment?

Reversed.

A house and several out-buildings were built on land owned by the Ridenours. They rented the house, some of the out-buildings, and some of the land to the Frances on a month-to-month basis. Several

years later, the Frances asked the Ridenours if they could "buy the place." The Ridenours agreed to sell the Frances 1.748 acres for $30,000.00, which included the house and all the out-buildings. Ridenours and Frances drafted their own sales contract. The Frances made a $1,000.00 downpayment upon signing the contract; the balance was due at closing. After signing the contract, the Frances continued to occupy the house. Approximately a month after signing the contract, but before closing, the house was destroyed by fire. The parties had not discussed, nor did the contract set forth, who should bear the risk of property loss pending closing.

## I.

### Risk of Loss

The Ridenours contend that the trial court erred in finding that they must absorb the loss of the house. They assert that the Frances assumed the risk of loss when the contract was signed and the Frances paid their downpayment. We agree.

■ Once the contract was consummated the Frances became the equitable owners and all the incidents of ownership accrued to them. Absent a contrary agreement by the parties, the Frances as equitable owners assumed the risk of loss. *Thompson v. Norton* (1860), 14 Ind. 187, 190; *Cf. Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, 646; *Cf. Indiana Ins. Co. v. Sentry Ins. Co.* (1982), Ind.App., 437 N.E.2d 1381, 1388; *See* D. Dobbs, *Handbook on the Law of Remedies,* 40 (1973).

The Frances contend that the Ridenours agreed to assume the risk of loss. They assert that this agreement can be inferred from conduct of the parties after the contract was consummated which they submit shows that the parties continued the relationship of landlord and tenant. This conduct was that the Frances continued to occupy the house, the Ridenours failed to return any of the July, 1978 rent, the Ridenours used certain out-buildings for storage rent free, and that the Ridenours continued to have the house insured.

■ A landlord-tenant relationship cannot be inferred from the parties' conduct. A tenancy cannot be inferred by the Frances occupying property which they had contracted to purchase. *Fall v. Hazelrigg* (1874), 45 Ind. 576, 578.

Neither can a tenancy be inferred from the Ridenours' failure to refund any of the July, 1978 rent. Because the Frances did not ask the Ridenours to refund any rent, payment of the July rent can only be considered part of the contract to purchase. Assuming *arguendo* that failure to refund any July rent resulted in a tenancy, this tenancy would be limited to July because the Frances did not pay rent for any month after July. However, the house burned after July while the Frances were occupying it rent free. Contrary to the Frances' assertion, the conduct of the parties indicates that a tenancy did not exist when the house was destroyed.

Similarly, the Ridenours' rent free use of certain out-buildings did not establish the Ridenours as landlords. These out-buildings had not been rented to the Frances. After the contract was consummated, the Frances made no request that the Ridenours remove their property from these out-buildings within any certain time. The only reasonable inference to be drawn from these circumstances is that the Ridenours had been allowed to remove their property at their leisure. The gratuitous use of the out-buildings by the Ridenours did not make them the landlords of the Frances during the contract to purchase period.

■ Finally, we consider the contention of the Frances that a continuation of Ridenours's insurance on the house and buildings reflected a landlord-tenant relationship. We can not agree with this contention, since under the contract to purchase, it was to Ridenours' interest pending the consummation of the contract to purchase to have his interests as titleholder insured. Mere continuation of an insurable interest in real property pending sale does not establish a landlord-tenant relationship. *Indiana Ins. Co., supra.*

■ This Court must reverse a negative judgment where the evidence is without conflict and leads to but one conclusion, and the trier of fact has reached the opposite conclusion. *Campbell v. City of Mishawaka* (1981), Ind.App., 422 N.E.2d 334, 336 (*trans. denied*). The uncontroverted evidence leads only to the conclusion that Ridenours did not agree to assume the risk of loss. Absent such agreement, the Frances as equitable owners assumed the risk of loss.

## II.

Specific Performance and Downpayment

■ The Ridenours next contend that the trial court should have granted their claim for specific performance. Whether specific performance should have been granted was a matter within the trial court's sound discretion. *Claise v. Bernardi* (1980), Ind.App., 413 N.E.2d 609, 612. However, the trial court's decision not to grant specific performance must be reversed if the decision was an abuse of discretion. *Id.* A decision is an abuse of discretion if it is clearly against the reasonable deductions which may be drawn from the facts before the court. *Id.*

■ Here, the trial court abused its discretion in not granting the Ridenours specific performance. It is a matter of course for courts to grant specific performance of a valid contract for the sale of real estate. *Spoden v. Krause* (1946), 117 Ind. App. 14, 68 N.E.2d 654, 656. The trial court specifically found that the contract was valid and that all conditions precedent had been fulfilled. It is clear from the trial court's judgment that specific performance was not granted only because the trial court found that the Frances had not assumed the risk of loss. However, because Frances had assumed the risk of loss we conclude that the trial court abused its discretion in not granting the Ridenours' claim for specific performance.

1. In the event this Court found that Frances did not assume the risk of loss, the Ridenours alternatively contended that the trial court erred in not awarding them the reasonable rental value

Since the Ridenours should have been granted specific performance, it follows that the trial court erred in granting the Frances the return of their $1,000.00 downpayment. The contract should have been specifically performed, not rescinded. Therefore, we reverse and remand the judgment of the trial court and instruct the trial court to enter judgment for the Ridenours.[1]

Reversed.

HOFFMAN, P.J., and GARRARD, J., concur.

of the property from August 1, 1978 through March 15, 1981. Since we find that the Frances did assume the risk of loss, we do not address this contention.